Hurley, J.
The plaintiffs, trustees of the Maushop Village Condominium Trust 3A, brought this action to foreclose on a condominium lien for unpaid common charges resulting from the defendants’ ownership of a condominium. After trial the judge found for the plaintiffs. The defendants claimed a report. The plaintiffs also claimed a report alleging the judge erred in not entering an order authorizing the sale of the unit and in his assessment of attorney’s fees.
The plaintiffs are the trustees of the unit owners association organized pursuant to G.L.c. 183A. The defendants are the owners of Unit 709 in Maushop Village Condominium 3A.[3] The defendants have owned Unit 709 since May 15, 1985. The defendants have paid no common charges since that date. After trial the judge found that the defendants are personally liable for their proportionate share of the common charges. He also found that the plaintiffs, trustees, have a lien on Unit 709 for payment of those common charges.
The defendants claim that the common charges were not lawfully assessed because the assessment process exceeds the authority of the trustees of Maushop Village Condominium 3A. G.L.c. 183A §10 has been construed to be “essentially an enabling statute,” Barclay v. DeVeau, 384 Mass. 676, 682 (1981) providing for flexibility in the management of condominium affairs and the discharge of trustees’ obligations. See Tosney v. Chelmsford Village Condominium Association, 397 Mass. 683 (1986). The report contains a recitation of the evidence produced at trial concerning the relationship between the Maushop Village Trust and the trustees of the five separate condominium associations that make up the “village.” In addition the report contains a copy of the master deed of the Maushop Village Condominium 3Á, amendments to the master deed, Condominium Declaration of Trust for Maushop Village Condominium 3A, Condominium Trustees Rules and Regulations, Maushop Village Declaration of Trust, Village Trustees Rules and Regulations, Declaration - Maushop Village, Grant of Easements - Maushop Village and Maushop Village Trust Budgets for 1986 through 1992. The defendants contend *57 that the legal relationships created by these documents divest the 3A trustees of the authority granted them in G.Lc. 183A, §10. The defendants contend that the delegation of the budget making process to the Village Trustees exceeds the authority granted by the statute and therefore the common charges unpaid by the defendants were never properly assessed.
Other than not paying any common charges since the purchase of the subject unit, the defendants have not undertaken any action to challenge the village structure. One defendant was a plaintiff in a prior action in the Land Court Department, but the issues raised in that litigation concerned allegations that certain buildings encroached appurtenant easements in Maushop Village. The budget making structure was not raised in that case. In Baker v. Monga, 32 Mass. App. Ct. 450 (1992), the Appeals Court at page 453 pointed out that “ [a] bsent an adjudication by a court of competent jurisdiction that the condominium association’s adoption of its budget or imposition of its assessment was accomplished in bad faith or in excess of its authority, condominium charges by the unit owners’ organization are not subject to set-off or some other form of self-help remedy.” Footnote 8 at page 454 suggests that the “unit owner’s complaints should in most cases be the subject of a separate claim.” The defendants have not made a payment of a common charge since they acquired unit 709 in 1985. The management structure and Village structure of the condominium was known to them when they bought their unit. This failure to pay threatens the financial stability of the condominium association of owners and is not a lawful assertion of a grievance in the assessment process. See Trustees of the Prince Condominium Trust v. Prosser, 412 Mass 723, 726 (1992). Nothing in the record suggests that the defendants have attempted, short of court action, to change the management structure. The relevant condominium documents have been a matter of public record since 1980. The defendants chose to purchase a unit knowing the management structure and the necessity to pay for the upkeep of the village. The defendants should not now be permitted to contest this structure by withholding their assessed common charges. Franklin v. Spadafora, 388 Mass. 764 (1983).
In any event, we find nothing in the management structure that violates G.L.c. 183A Nothing disturbs the unit owners percentage ownership or deeded interest in their condominium. The statute provides specifically for the appointment of a manager or managing agent “to administer the condominium.” §10(c). In this structure it is the budget-making authority that is vested in the Village Trustees. From 1985 to 1992 the village charges comprise between 68% to 100% of the total budget. These charges reflect expenses for maintenance of roads, streetlights, insurance, care and maintenance of the common areas of the five condominium associations, lawn care, fire alarms, payments of betterments, assessments and taxes. In the context of this cluster style development, this management structure does not offend G.Lc. 183A We find no error in the trial judge’s rulings.
The plaintiffs claim the judge erred in not entering an order authorizing the sale of Unit 709 to satisfy the lien for unpaid condominium charges. G.L.c. 254 §5A provides for the entry of an order authorizing a sale to satisfy such a lien.[4] By St. 1989 c.341, §100 the Legislature provided that a lien on a condominium established under G.L.c. 183A §6 is enforceable in either the Superior Court or the District Court. Neither side argues the point that the District Courts lack jurisdiction to order the sale of a condominium unit to satisfy the lien. It does not support statutory harmony to suppose that the Legislature established concurrent jurisdiction in tihe Superior and District Courts to enforce liens on condominiums but did not extend to the District Courts the concurrent power to order a sale of a condomin *58 ium to satisfy the lien. See Tessier v. Salem Five Cents Savings Bank, 1992 Mass. App. Div. 135, 136. Section 5A by its plain reading does not restrict sale orders to the Superior Court.
Judgment originally entered in this case on December 7,1992.[5] In his “Findings, Rulings and Order for Judgment” the judge provided that “[T]he defendants’ unit is ordered to be sold to satisfy the lien, all as provided for in G.L.c. 254.” An amended judgment followed containing no mention of an order for sale. By motion the plaintiffs sought a further amendment to the judgment to order the sale. This motion was denied. On the basis of the record before us, we are unable to determine the rationale for the deletion of the order for sale.
Counsel Fees
Plaintiffs’ counsel has moved for the assessment of attorneys’ fees incurred in post-trial and appellate proceedings. The Condominium Declaration of Trust of April 16, 1980 provides in Section 7.4 that “ [I] n the event of default by any Unit Owner in paving to the Condominium Trustees the common charges as determined by die Condominium Trustees, such Unit Owner shall be obligated to pay interest on such common charges from the due date thereof at the rate established by the Condominium Trustees but not exceeding the maximum rate permitted by law, together with all expenses, including attorneys’ fees, incurred by the Condominium Trustees in any proceeding brought to collect such unpaid common charges. The Condominium Trustees shall have the right and duty to attempt to recover such common charges together with interest thereon, and the expenses of the proceeding, including attorneys’ fees, in an action to recover the same brought against such Unit Owner, or by foreclosure of the lien on the Unit of such Unit Owner in the manner provided in Section 5 of Chapter 183A.” The record before us is sufficiently informative to permit us to determine the worth of the legal fees incurred. The Report is two hundred seventy-three pages long. The trial lasted two days. The issues raised cover eight years of condominium budgets. Over this time Maushop Village expanded from 126 units to 183 units. The legal issues are complex and concern the relationships among the entities as stated above. We have reviewed counsel’s affidavit and award attorneys’ fees in the sum of $7,868.75 for post-trial and appellate proceedings.
See Heller v. Silverbranch Construction Corp., 376 Mass. 621 (1987). See G.L.c. 183A, §6.
An order for sale of Unit 709 shall be entered after notice and an opportunity to be heard on the form of that order in the trial court. The defendants’ report is dismissed.

Maushop Village is a group of five residential condominium associations with a total of 183 Units. Maushop Village Condominium 3Ais one of the five associations and consists of 40 units. Two of the trustees of plaintiff are also trustees of Maushop Village, a trust established to administer the five condominium associations. The beneficiaries of the Maushop Village Trust are the trustees of each of the five individual condominium associations.

”When the amount of a lien under section six of Chapter one hundred and eighty-three A has been established by a court, the court shall enter an order authorizing the sale of the real estate to satisfy such lien.”

A copy of a separate judgment was not included in the Report.